UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MINDY SMITH, et al.,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>　　　　　　　　　　　Defendants. | Case No.: 15-CV-0391 W (RBB)<br><br>**ORDER DENYING MOTION TO QUASH SERVICE OF SUMMONS [DOC. 22]** |

Pending before the Court is Defendant Francis Gannon M.D.'s motion to quash service of the summons and to dismiss the First Amended Complaint ("FAC") for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). The Court decides the matters on the papers submitted and without oral argument. See Civ. L. R. 7.1(d.1). For the reasons stated, the Court **DENIES** the motion to quash [Doc. 22].

**I.　BACKGROUND**

　　The facts as alleged in Plaintiffs' FAC and Opposition are as follows.

　　On June 18, 2012, Mindy Smith slipped on a floor tile in her home, which resulted in a fractured left femur. (*FAC* [Doc. 18], ¶ 18.) Ms. Smith was taken to a local hospital

1

in San Diego, California for diagnosis and testing, and was subsequently transferred to an orthopedic specialist to undergo surgery. (*Id.*, ¶ 18.) During the recovery period, Ms. Smith's physician suspected an underlying medical issue was delaying her full recovery. (*Opp'n* [Doc. 23], 1:17-19.) In October 2012, Ms. Smith was referred to the Naval Medical Center, also located in San Diego, for testing. (*Id.*, 1:19-20.)

In late October 2012, a physician from the Naval Medical Center performed a biopsy of bone materials taken from Ms. Smith's left femur. (*Opp'n*, 1:22-25) The biopsy revealed the presence of cancer, though it was unclear what type of cancer had manifested. (*Id.*, 1:25-26.) The Naval Medical Center, therefore, asked Defendant Francis H. Gannon, M.D., a resident of Texas and professor of Pathology at Baylor College of Medicine, to review the biopsy. (*Opp'n.*, 1:27-2:1; *Gannon Decl.* [Doc. 22-3], ¶¶ 2, 5, 6.) In early November 2012, the biopsy was sent to Dr. Gannon in Houston, Texas. (*Opp'n.*, 1:26-27; *Gannon Dec.*, ¶6.)

After Dr. Gannon reviewed the biopsy, he prepared and sent via fax and mail two reports to the Naval Medical Center in San Diego, California. (*Gannon Dec.*, ¶ 7.) The first report was prepared around November 13, 2012, and discussed his findings. (*Id.*) The second report was prepared approximately two weeks later, and was an addendum to the first report. (*Id.*) Dr. Gannon had no further involvement in Ms. Smith's medical treatment, and Baylor College was paid for Dr. Gannon's services. (*Id.*, ¶ 8.)

In this lawsuit, Plaintiffs allege Dr. Gannon's reports erroneously diagnosed Ms. Smith's cancer, which resulted in an inappropriate surgery and medical treatments. (*FAC*, ¶ 22.) Furthermore, Plaintiffs allege the misdiagnosis and failure to render correct and appropriate treatment led to her untimely death. (*Id.*, ¶¶ 24–29.)

On February 20, 2015, Ms. Smith and her husband filed this personal-injury lawsuit under the Federal Tort Claims Act for medical and professional negligence against the United States of America, the Department of the Navy, the Naval Medical Center, and a number of the center's healthcare providers who are also officers in the Navy. (*Complaint* [Doc. 1].) On July 28, 2015, Ms. Smith passed away. Mr. Smith then

filed the FAC to reflect changes in the parties and claims necessitated by Ms. Smith's passing. Specifically, Plaintiffs added wrongful-death causes of action, Ms. Smith's son as an additional plaintiff, and Dr. Gannon as a defendant. (*Id.*)

On April 8, 2016, Dr. Gannon filed this motion to quash and dismiss the FAC. Dr. Gannon argues the Court lacks personal jurisdiction over him.

## II.  LEGAL STANDARD

Where a defendant moves to dismiss for lack of personal jurisdiction, it "is the plaintiff's burden to establish the court's personal jurisdiction over a defendant." Doe v. Unocal, 248 F.3d 915, 922 (9th Cir. 2001) (citing Cubbage v. Merchent, 744 F.2d 665, 667 (9th Cir. 1984), cert. denied 470 U.S. 1005 (1985)). The plaintiff needs to make a prima facie showing of jurisdictional facts to withstand a motion to dismiss. Id. That is, the plaintiff need only demonstrate facts that if true, would support jurisdiction over the defendant. Id. Although the plaintiff cannot "simply rest on the bare allegations of the complaint," uncontroverted allegations contained in the complaint must be taken as true. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). Furthermore, conflicts between the parties contained in affidavits must be resolved in the plaintiff's favor. Id.

A district court has personal jurisdiction over a defendant only if a statute authorizes jurisdiction and the assertion of jurisdiction does not offend due process. Unocal, 248 F.3d at 922. "Where . . . there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." Yahoo! Inc., v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1205 (9th Cir. 2006); see also Fed.R.Civ.P. 4(k)(1)(a). Because California's long-arm statute is coextensive with federal due-process requirements, the jurisdictional analyses under state and federal law are the same. Yahoo!, Inc., 433 F.3d at 1205; Cal. Civ. Proc. Code § 410.10.

Absent traditional bases for personal jurisdiction (i.e. physical presence, domicile, and consent), the Due Process Clause requires that a nonresident defendant have certain minimum contacts with the forum state such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Unless a defendant's contacts with a forum are so substantial, continuous, and systematic that the defendant can be deemed to be "present" in that forum for all purposes, a forum may exercise only "specific" jurisdiction—that is, jurisdiction based on the relationship between the defendant's forum contacts and the plaintiff's claim. See Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408 (1984).

Specific jurisdiction exists where: (1) the defendant purposefully availed himself of the privilege of conducting activities in the forum; (2) the claim arises out of the defendant's forum related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, i.e., it is reasonable. See Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000) (citing Cybershell, Inc. v. Cybershell, Inc., 130 F.3d 414, 417 (9th Cir. 1997)). Plaintiff bears the burden of satisfying the first two prongs of the test. Schwarzenegger, 374 F.3d at 802. If plaintiff succeeds in satisfying both prongs, the burden shifts to the defendant to present a "compelling case" that the exercise of jurisdiction would not be reasonable. Id.

### III. DISCUSSION

Plaintiffs concede that Dr. Gannon's contacts with California are not sufficient for general personal jurisdiction. (*Opp'n*, 5:18-20.) However, Plaintiffs argue that specific jurisdiction exists because Dr. Gannon willingly accepted the lesion from Ms. Smith's physician, and sent his report and addendum to the Naval Medical Center in San Diego. Dr. Gannon disputes that this conduct is sufficient to support specific jurisdiction.

In support of their argument, Plaintiffs rely on the Tenth Circuit case Kennedy v. Freeman, 919 F.2d 126 (10th Cir. 1990). In Kennedy, an Oklahoma resident, Marsha

4

Kennedy, sought medical advice from her physician in Oklahoma because of a mole on her thigh.  Id. at 127.  The doctor removed the lesion and sent it to a doctor in Texas, Dr. Robert Freeman, to measure its thickness.  Id.  Dr. Freeman measured the lesion and mailed a report to Ms. Kennedy's Oklahoma doctor expecting the report would be used to treat her.  Id.  Unfortunately, Dr. Freeman's report was inaccurate.  As a result, Ms. Kennedy was not treated properly, and the malignant melanoma spread over her entire body.  Id.  Ms. Kennedy then filed a lawsuit against Dr. Freeman, who filed a motion to dismiss for lack of personal jurisdiction.  The district court granted the motion finding that jurisdiction over a nonresident doctor could not exist "unless there is some form of solicitation" by Dr. Freeman for the out-of-state work.  Id. at 129.

On appeal, the Tenth Circuit explained that although "a doctor's practice may be local, she may often treat out-of-state patients who seek her help."  Kennedy, 919 F.2d at 129.  "In the context of doctor-patient litigation, special rules have evolved to ensure that personal jurisdiction is asserted over a doctor only when she has purposefully availed herself of the privileges of conducting activities within her patient's state."  Id.  Under those rules, jurisdiction does not exist when "doctors who have essentially local practices become involved in another state not as a result of their intention to do so but, rather, as a result of the action of their out-of-state patients."  Id., citing Wright v. Yackley, 459 F.2d 287, 288–289 (9th Cir. 1972) (no jurisdiction in Idaho over South Dakota doctor who treated his patient in South Dakota and merely phoned a prescription refill into Idaho); McAndrew v. Burnett, 374 F.Supp. 460 (M.D. Penn. 1974) (no jurisdiction in Pennsylvania over New York surgeon where alleged negligent surgery occurred in New York and decedent subsequently moved to Pennsylvania).

Turning to the facts before it, the Tenth Circuit reasoned that although Dr. Freeman did not solicit plaintiff's business in Oklahoma, he nevertheless purposefully directed his actions there:

> While Freeman did not solicit Kennedy's business in Oklahoma, he did purposefully direct his actions there.  He willingly accepted the sample from

> Oklahoma; he signed a report establishing the thickness of lesion; and he evidently sent his bill there. Freeman rendered his diagnosis to Kennedy in Oklahoma, through the mail, knowing its extreme significance and that it would be the basis of Kennedy's further treatment.

Id. at 129.

After determining that Dr. Freeman purposefully availed himself of the privilege of conducting business in Oklahoma, the Tenth Circuit then turned to the issue of whether the exercise of jurisdiction would be reasonable. The district court had found that exercising jurisdiction would not be reasonable because Oklahoma had a compelling interest in ensuring access to out-of-state, specialized medical care. The Tenth Circuit disagreed under the facts of the case, reasoning that "when a doctor purposefully directs her activities at the forum state, that state has a greater interest in deterring medical malpractice against its residents." Id. (citations omitted).

The facts of this case are nearly identical to Kennedy. In both cases, the patients' treating physicians who were located in the forum state, solicited the out-of-state doctors to review the biopsies. Neither patient traveled to the defendant doctor's home state for treatment. Also in both cases, the out-of-state doctors willingly accepted the assignments, evaluated the tissue samples and mailed the reports back to the patients' treating physicians in the forum state. It is reasonable to infer from these facts that Dr. Gannon, like Dr. Freeman in Kennedy, understood the significance of his report and that it would be used to treat Ms. Smith in California. The Court, therefore, agrees with the Tenth Circuit's conclusion that these facts establish that Dr. Gannon purposefully directed his actions toward California, and that the exercise of jurisdiction would be reasonable.

Dr. Gannon nevertheless urges this Court to disregard Kennedy for two reasons. First he argues that Kennedy is distinguishable. The sole distinction Dr. Gannon relies upon is that the Texas doctor in Kennedy billed the patient directly, whereas here Dr. Gannon's employer, Baylor College, billed for the services. The Court is unimpressed

1 with this distinction. Although the Tenth Circuit identified the direct-billing arrangement
2 as additional evidence of purposeful direction towards the patient's home state, the
3 primary basis for the court's holding was that Dr. Freeman willingly accepted the
4 assignment for a patient in another state, knowing that his work would be used to treat the
5 patient in her home state: "Freeman rendered his diagnosis to Kennedy in Oklahoma,
6 through the mail, knowing its extreme significance and that it would be the basis of
7 Kennedy's further treatment." Kennedy, 919 F.2d at 129. As discussed above, the same
8 facts exist in this case. Moreover, given that the claims at issue here and in Kennedy
9 involved medical malpractice, the facts most relevant for specific jurisdiction are that the
10 doctors knew the patients were located in another state, and that their services would be
11 used to treat the patients in that state.

12 Dr. Gannon next argues that Kennedy should not be followed because it is only
13 binding within the Tenth Circuit, and suggests Ninth Circuit authority supports his
14 contention that specific jurisdiction does not exist. In support of this argument, Dr.
15 Gannon cites Wright v. Yackley, 459 F.2d 287, and Prince v. Urban, 49 Cal. App. 4th
16 1056 (1996), inferring that the cases are at odds with Kennedy. Again, the Court
17 disagrees with Dr. Gannon.

18 In Wright, the patient, a South Dakota resident, sought treatment from a doctor in
19 South Dakota, who prescribed certain medication as part of the treatment. Later, the
20 patient moved to Idaho and requested a copy of the original prescription from the doctor
21 in South Dakota. The doctor provided the prescription free of charge, and the patient
22 filled the script in Idaho and continued to take the medication. Later, the patient claimed
23 she was injured by the medication and sued the doctor for malpractice in Idaho. The
24 district court dismissed the case finding that it lacked jurisdiction over the nonresident
25 doctor.

26 In affirming the dismissal, the Ninth Circuit explained that "[i]n the case of
27 personal services, focus must be on the place where the services are rendered, since this
28 is the place of the receiver's (here the patient's) need." Id. 459 F.2d at 289.

Additionally, with respect to medical services, the "average doctor's" practice is localized and does not involve "systematic or continuing effort on the part of the doctor to provide services which are to be felt in the forum state. [Citation omitted.]" Wright, 459 F.2d at 290. Following these principles, the Ninth Circuit found that if the doctor "was guilty of malpractice, it was through acts of diagnosis and prescription performed in South Dakota[,]" and the "mailing of the prescriptions to Idaho did not constitute new prescription." Id.

In Prince, a California resident suffering from migraines was referred by her California physician to an Illinois headache specialist. The California patient traveled to Illinois to see the physician and, after being treated, returned to California. Thereafter, the physician had a number of telephone conversations with the patient, and called in a prescription to a California pharmacy when her medication ran out. Eventually, the patient became confused and disoriented from using the medication, and was hospitalized at a California detoxification facility. After being released, the patient sued the Illinois specialist for malpractice in California. The specialist filed a motion to quash service of the summons, which the trial court granted.

In evaluating whether to exercise jurisdiction against the out-of-state doctor, the California Court of Appeal explained that in the "typical" case, the "prospective patient travels out of state to a doctor, and there receives allegedly negligent medical treatment." Id. at 1058. In those situations, "courts consistently hold that the patient's home state courts cannot exercise personal jurisdiction over the physician even though the *effects* of the doctor's negligence are (literally) felt in the patient's home state. [Citations omitted.]" Id. The facts before the court, however, were distinguishable because after receiving treatment in the doctor's home state, the patient traveled to her home state and received certain follow up services over the telephone. Those facts made the issue of jurisdiction "a close one." Id. at 1059. Nevertheless, relying on Wright, the Court of Appeal affirmed the trial court:

> We now affirm the superior court's order that it lacked personal jurisdiction over the Illinois physician. Granted, the case *is* a close one. But the balance is tipped in the direction of no jurisdiction by a point articulated by the Ninth Circuit in *Wright v. Yackley* (9th Cir. 1972) . . .: *A physician's services are personal; they are not directed at a specific location, but at the specific patient.* (See *id* at pp. 289–290.) By virtue of the 'very nature of the average doctor's localized practice, there is no systematic or continuing effort on the part of the doctor to provide services which are to be felt in the forum state.' (*Id.* at p. 290.) Thus where, as here, the out-of-state doctor's contact with the forum state consists of nothing more than telephonic follow-up on services rendered in the doctor's own state, it is unreasonable for the patient's home state to exercise personal jurisdiction over the physician. (See *id.* at p. 289.)

Id. at 1059 (emphasis in original).

Wright and Prince are of little assistance to Dr. Gannon for at least two reasons. First, contrary to Dr. Gannon's assertion, there is nothing in either case that conflicts with the reasoning or conclusion in Kennedy. In fact, Prince cites Kennedy approvingly. See Prince, 49 Cal.App.4th at 1061.

Second, Wright and Prince bear little factual resemblance to this case. Unlike Ms. Smith, the patients in Wright and Prince sought treatment in the doctor's home state. This fact is important because it supported the conclusion in those cases that the doctors' practices were truly "localized" and there was no effort by either doctor (aside from the limited follow-up services) to provide treatment that was directed or would be felt in the patients' home states.

In contrast, as discussed above, it is reasonable to infer from the facts that when Dr. Gannon accepted the assignment, he knew (1) Ms. Smith was located at the Naval Medical Center in California, and (2) that her treatment would depend on the type of cancer identified in his report and addendum, which were sent to California. As a result, the very nature of Dr. Gannon's practice, at least vis-à-vis Ms. Smith, cannot be said to be "localized." Rather, as described by the California Court of Appeal in Prince, the

9

"doctor-patient relationship" between Dr. Gannon and Ms. Smith "was, essentially, a mail-order one." Id. at 1061.

For these reasons, the Court finds specific jurisdiction exists over Dr. Gannon.

IV. **CONCLUSION**

In light of the foregoing reasons, the Court **DENIES** the motion to quash service of summons [Doc. 22].

**IT IS SO ORDERED.**

Dated:  August 30, 2016

_____
Hon. Thomas J. Whelan
United States District Judge